UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD LEE,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants. | Case No. 21-cv-07231-JSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 7 |

Plaintiff Howard Lee, who is representing himself, brings claims against Defendants Bank of America, N.A. and Bank of America Corporation (collectively "BofA") for negligence, fraud, and contract-related breaches. Defendants' motion to dismiss is now pending before the Court.[1] (Dkt. No. 7.) After carefully considering the parties' written submissions, the Court concludes that oral argument is not required. *See* N.D. Cal. Civ. L.R. 7-1(b). The Court GRANTS Defendants' motion to dismiss with leave to amend because the statute of limitations bars some of Plaintiff's claims and Plaintiff has otherwise failed to state any viable claim against Defendants.

## BACKGROUND

**A. Complaint Allegations**

Plaintiff Howard Lee is a Florida resident. (First Amended Complaint, Dkt. No. 1-1 ("FAC") ¶ 1.)[2] In 2006 and 2007, Plaintiff and his two brothers attempted to invest a total of $1,150,000 into 14 Seaside Marina lots in Nicaragua. (FAC ¶¶ 1, 28.) Plaintiff invested the money through Yessica Cai, who was Vice President of Investment at Bank of America at the

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 10.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Cupertino branch and acted as Plaintiff's financial advisor, banker, and concierge.  (FAC ¶¶ 18-29.)  Ms. Cai suggested the investment to Plaintiff "while in her role as Bank of America financial advisor."  (FAC ¶ 29.)  Plaintiff "thought that Bank of America had evaluated and vetted th[e] investment opportunity," because "Ms. Cai had suggested [it] while Mr. Lee was visiting her in her official role at Bank of America."  (FAC ¶ 31.)  Ms. Cai subsequently handled the entire transaction with her business partners, who are not associated with BofA.  (FAC ¶¶ 33, 35.)

In 2006 and 2007, Plaintiff wired Ms. Cai $550,000 and $600,000, respectively, to purchase the Seaside Mariana lots.  (FAC ¶¶ 35, 40.)  The latter sum included $220,000 from his brother.  Each time, Ms. Cai informed Plaintiff "that the investment had concluded and that he owned the lots."  (FAC a ¶¶ 37, 44.)  "However, Ms. Cai [] did not ensure that Mr. Lee got title to the lots he invested in."  (FAC ¶¶ 38, 45.)  Instead, "Ms. Cai simply stole the Plaintiff's funds."  (FAC at ¶ 46.)

In spring 2020, Plaintiff "had heard from Ms. Cai that Seaside Mariana might not have recorded deeds for the lots, as he had expected, that the Plaintiff thought he had purchased in 2006 and 2007."  (FAC at ¶ 51.)  In May and June 2020, Plaintiff hired attorneys in Nicaragua who informed him that he needed to consult the property registry through a representative.  (FAC at ¶ 54.)  The following month, he contacted an attorney at a title services company, and in August 2020, Plaintiff's attorneys discovered that he did not actually own any of the properties.  (FAC at ¶¶ 55-59.)

B.  **Procedural Background**

On March 29, 2021, Plaintiff filed this action against Bank of America, N.A. and Bank of America Corporation, Bank of America, N.A.'s parent company in the San Francisco Superior Court.  (FAC ¶¶ 7, 68; Dkt. No. 7 at 12.)  Plaintiff brings six claims: (1) negligent hiring, retaining, and supervising; (2) fraud by omission; (3) breach of fiduciary duty; (4) breach of the covenant of good faith and fair dealing; (5) breach of contract; and (6) negligent misrepresentation.  The last five claims rest on the theory of *respondeat superior* liability, as Plaintiff claims that Ms. Cai was acting through BofA and within her official BofA duties. (Dkt. No. 7 at 14; FAC ¶ 31.)

2

1    Defendants removed the case to the Northern District Court of California based on
2 diversity jurisdiction and moved to dismiss under Rule 12(b)(6). (Dkt. No. 1; Dkt. No. 7.)
3 Plaintiff thereafter sought and obtained several extensions of time to respond to the motion to
4 dismiss on the basis that he was seeking counsel to represent him. (Dkt. Nos. 11, 12, 13.) In his
5 last request, Plaintiff represented that he had obtained counsel and his counsel needed additional
6 time to "come up to speed." (Dkt. No. 14.) The Court granted the request for an extension. (Dkt.
7 No. 18.) Shortly before the extended opposition due date, Plaintiff filed a motion to transfer venue
8 without representation by an attorney. (Dkt. No. 19.) He subsequently filed yet another request
9 for an extension of time to respond to the motion to dismiss based on the pending motion to
10 transfer venue. (Dkt. No. 20.) The Court denied that request. (Dkt. No. 25.) In Plaintiff's most
11 recent filing, his reply on the motion to transfer venue, Plaintiff asks the Court to stay his action so
12 that he can refile in the Middle District of Florida. (Dkt. No. 22.) No counsel has entered an
13 appearance on Plaintiff's behalf.

## REQUEST FOR JUDICIAL NOTICE

15    Defendants request the Court take judicial notice of Plaintiff's previous suits involving the
16 transactions underlying his claims here. Generally, a district court cannot "consider material
17 outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6);"
18 however, Federal Rule of Evidence 201 allows a district court to do so through judicial notice.
19 *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). A court can take judicial
20 notice of facts "not subject to reasonable dispute" because they are "generally known within the
21 court's territorial jurisdiction" or can be "accurately determined from sources whose accuracy
22 cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes "undisputed matter of
23 public record, including documents on file in federal and state courts. *Harris v. Cty. of Orange*,
24 682 F.3d 1126, 1132 (9th Cir. 2012).

25    Defendants request judicial notice of seven documents, six of which are filings from other
26 actions Plaintiff brought regarding the transactions that are at issue here. They are: (1) a copy of
27 Plaintiff's complaint in the matter *Howard Lee v. Yessica Cai, Carmelita Jocson, NYCA LLC*,
28 Civil Action No. CA20-609, filed in the 7th Judicial Circuit of the State of Florida, filed June 1,

United States District Court
Northern District of California

3

2020; (2) a copy of Plaintiff's response to Defendants' Motion to Dismiss in the matter *Howard Lee v. Yessica Cai, Carmelita Jocson,* Civil Action No. CA20-609 filed August 31, 2020; (3) a copy of Plaintiff's complaint in the matter *Howard Lee v. Yessica Cai, Yifeng Chen, Carmelita Jocson, and NYCA LLC,* Case No. CGC-21-589581, filed February 2, 2021; (4) a copy of a declaration and sworn affidavit in the matter *Howard Lee v. Yessica Cai, Yifeng Chen, Carmelita Jocson, and NYCA LLC*, Case No. CGC-21-589581 pending in the San Francisco Superior Court in the State of California, filed July 15, 2021; (5) a copy of the notice of removal in the matter *Howard Lee v. Equity Trust Company*, Case No. 1:21-CV-01052 pending in the Eastern Division of the Northern District Court of Ohio, filed April 14, 2021; (6) a copy of the second amended complaint in the matter *Howard Lee v. Equity Trust Company,* Case No. 1:21-CV-01052 pending in the Eastern Division of the Northern District Court of Ohio, filed on July 14, 2021; and (7) a copy of Plaintiff's original complaint filed in this action on March 29, 2021. (Dkt. No. 7-1, Request for Judicial Notice at 2-3.)

Plaintiff does not dispute this request or the documents' authenticity. Further, these documents are all on file in federal and state courts. *Harris*, 682 F.3d at 1132. Therefore, the Court GRANTS Defendants' request for judicial notice on the seven pleadings.

## JURISDICTION

A defendant may remove an action from state court to federal court so long as the federal court has original jurisdiction, and the defendant is not a citizen of the state in which the action was originally brought. 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332. Here, Defendants invoke diversity jurisdiction which requires complete diversity of citizenship and an amount in controversy to exceed $75,000.

The parties here are diverse. Plaintiff is a resident of Florida and Defendants are incorporated in Delaware with their principal place of business in North Carolina. (FAC ¶ 1; Notice of Removal, Dkt. No. 1 ¶ 10); *see* 28 U.S.C. Section 1332(c). The amount in controversy requirement is also satisfied. Plaintiff seeks $1,150,000 in damages along with "attorney's,

paralegal's, consultants', and legal assistant's fees," travel costs, court costs, and compensation for his time. (FAC at 13, 22.) This Court therefore has diversity jurisdiction over this case.

## DISCUSSION

Defendants move to dismiss all of Plaintiff's claims: (1) negligent hiring, retention, and supervision (Count I), (2) fraudulent omission (Count II), (3) breach of fiduciary duty (Count III), (4) breach of the covenant of good faith and fair dealing (Count IV), (5) breach of contract (Count V), and (6) negligent misrepresentation (Count VI). Defendants argue that the applicable statute of limitations bars each claim and that, even if the statute of limitations issue could be overcome, Plaintiff fails to state a claim. The Court GRANTS Defendants' motion.

### A. Statute of Limitations

Under California law, the statute of limitations for a claim begins when the cause of action is complete with all its elements. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). Defendants insist that each of Plaintiff's claims was complete by no later than 2007 when he did not receive title to the land that he purchased. (Dkt. No. 7 at 18-19.)

A motion to dismiss based on a statute of limitations can only be granted when its running "is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (internal quotation marks and citation omitted). According to the Complaint, Plaintiff is uncertain of the exact investment dates, but he alleges that the transactions occurred in 2006 and 2007. (FAC ¶ 70.) Further, despite making payments in 2006 and 2007 on the Seaside Marina lots, Plaintiff alleges that he never received documentation that he owned the lots. (FAC ¶¶ 38, 45.) However, Plaintiff did not learn until the spring of 2020 that "Seaside Marina might not have recorded deeds for the lots, as he had expected, that the plaintiff thought he had purchased in 2006 and 2007." (FAC at ¶ 51).

#### 1. Contract-Based Claims

The statute of limitations on Plaintiff's contract claims is from two years to four years. *See* Cal. Civ. Proc. §§ 337, 339 (stating that written contract claims must be brought within four years of the incident and oral contract claims must be brough within two years of the incident). "A cause

5

of action for breach of contract generally accrues at the time of breach." *Kaufman v. Mut. Life Ins. Co. of New York*, 108 F.3d 1385 (9th Cir. 1997).

### a.  Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of the covenant of good faith and fair dealing alleges that Ms. Cai breached the covenant when she accepted payments from Plaintiff's prospective counter-party. (FAC ¶ 103.) Thus, the claim accrued when she accepted the payments. The complaint alleges that she accepted the payments when Plaintiff wired her the money in 2006 and 2007. (FAC ¶¶ 35, 40.) As this is more than four years before the complaint was filed, the complaint's allegations demonstrate that the claim for breach of the covenant of good faith and fair dealing is barred by the statute of limitations.

### b.  Breach of Contract Claim

Plaintiff's breach of contract claim alleges that Ms. Cai agreed to take all steps to ensure that Plaintiff would obtain title to the land and that she breached that agreement by failing to ensure that Plaintiff would obtain title to the land. (FAC ¶ 109.) The claim thus accrued when Plaintiff provided the investment to Ms. Cai and Ms. Cai did not ensure he obtained title; that is, it accrued around 2007. (FAC ¶¶ 35, 37-38, 40, 44-45.) As the complaint pleads a breach that occurred more than four years ago, the complaint's allegations show on their face that the breach of contract claim is barred by the statute of limitations.

### c.  Tolling

Given Plaintiff's allegation that he did not discover the breach until 2020 (FAC at ¶ 52), the statute of limitations may be tolled.

Under the "discovery rule," the time will not begin to run until the plaintiff has discovered or has reason to discover the cause of action, such as when a reasonable person would be suspicious. *Fox*, 35 Cal 4th at 807. In a typical contract case, the plaintiff is usually aware of the breach immediately and thus the claim starts to accrue right away, and the discovery rule does not apply. *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003). However, under California law the discovery rule can apply to contract claims when discovery of the breach of contract is hindered by misrepresentations and fraud such that the breach was not reasonably

discoverable by the plaintiff. *Id.* at 1039-40. The rationale is that plaintiffs should not suffer the consequences of the statute of limitations when they have been prevented from knowing they were harmed; therefore, if (1) "[t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect; (2) the defendant has been in a far superior position to comprehend the act and the injury; or (3) the defendant had reason to believe the plaintiff remained ignorant [that] he had been wronged," the discovery rule will apply. *Id.* at 1039 (internal citations and quotation marks omitted). Here, while Plaintiff alleges that Ms. Cai misrepresented to him that he owned the land (FAC ¶¶ 37, 44, Ex. D), he does not allege any facts that support a plausible inference that it would have been difficult for him to detect that he did not, in fact, own the land. Nonetheless, as it is not apparent that Plaintiff cannot properly plead tolling, he will be granted leave to amend to allege facts that plausibly support tolling of the statute of limitations on his contract claims.

### 3. Fraud and Negligence-Based Claims

Plaintiff alleges claims for (1) fraudulent omission and (2) breach of fiduciary duty based on Ms. Cai's failure to disclose that she was receiving "kickbacks" from Plaintiff's prospective counter-party (FAC ¶¶ 87, 97), (3) negligent misrepresentation based on Ms. Cai's promises that Plaintiff had acquired the title to the lots (FAC ¶¶ 116-17), and (4) negligent hiring, supervision and retention based on Defendants' conduct employing Ms. Cai (FAC ¶ 81-82).

The statute of limitations for fraud and intentional misrepresentation is three years. Cal. Civ. Proc. Code § 338(d); *Platt Elec. Supply, Inc. v. EOFF Elec.,* Inc., 522 F.3d 1049, 1054 (9th Cir. 2008) (noting there is a three-year statute of limitations for claims grounded in fraud or mistake). The statute of limitations for Plaintiff's negligence-based claims is two to four years. *See Platt.*, 522 F.3d at 1055 (holding that negligent misrepresentation also has a two-year statute of limitations); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (2014) (the statute of limitations for breach of fiduciary duty claim is either three or four years, depending on if the breach is fraudulent); *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1025 (C.D. Cal. 2020) (negligent hiring, supervision, and retention claims have a two year statute of limitations).

These causes of action are "not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Platt,* 522 F.3d. at 1054; Cal. Civ. Proc. § 339. However, if there are reasonable grounds for suspicion, a plaintiff must investigate. *Platt,* 522 F.3d. at 1054; *McCoy v. Gustafson*, 180 Cal. App. 4th 56, 109 (2009). To determine when the cause of action accrued, courts "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Fox*, 35 Cal 4th at 807; *see also Daluise v. Mccauley*, 2015 WL 7573649 (C.D. Cal. Nov. 24, 2015) (stating that a claim for negligence accrues when a plaintiff has a reason to suspect a basis for her claim). "[W]hen a plaintiff relies on the discovery rule or allegations of fraudulent concealment, as excuses for an apparently belated filing of a complaint, the burden of pleading and proving belated discovery of a cause of action falls on the plaintiff." *Czajkowski v. Haskell & White,* LLP, 208 Cal. App. 4th 166, 174, 144 Cal. Rptr. 3d 522, 528 (2012).

Plaintiff alleges that he was not aware until 2020 that the deeds for the lots were not recorded. (FAC at ¶ 51.) The test, however, is not when Plaintiff became aware, but rather when he reasonably should have been aware. *Platt*, 522 F.3d at 1054. Defendants insist that Plaintiff should have least suspected Ms. Cai's alleged wrongdoing when he failed to receive documentation in 2006 or 2007. (Dkt. No. 7 at 18-19; FAC ¶¶ 38, 45.) They argue that by the very latest, Plaintiff should have become suspicious by March 30, 2008, which was the agreed upon closing date in the contract that Plaintiff attached to his complaint against the Equity Trust Company. (Dkt. No. 7-8 at 95.) At that time Plaintiff should have, but did not, receive a deed to the lots. (*Id.*) Further, he alleges he put the property up for sale in 2009, further triggering a duty to investigate his ownership. (Dkt. No. 7-6 ¶ 13.) Plaintiff also alleges that the amount he invested was significant to him (FAC ¶¶ 64, 73-77). Based on these judicially noticeable facts and complaint allegations, a reasonable person would have investigated whether he owned the property well more than four years before this lawsuit was filed and therefore the claims are time barred.

In *Tarsha v. Bank of Am., N.A.*, 2012 WL 12868387 at *1, 4 (S.D. Cal. June 28, 2012), for example, the plaintiff, a "lay person," owned a property and refinanced multiple times and then

8

claimed she was unaware that the transactions were fraudulent because the defendant withheld key facts. The court held that the discovery rule did not apply to make the plaintiff's lawsuit timely. In so holding, the court noted that the plaintiff spent a large amount of money during these transactions and never received any documentation, circumstances which would lead a reasonable person to investigate the legitimacy of the transactions. *Id.* at *5. Similarly, here, Plaintiff spent over a million dollars on property for which more than a decade he apparently never received any documentation evidencing his ownership; a reasonable person in Plaintiff's circumstances would have investigated his ownership interest.

Plaintiff's allegations that he relied on Ms. Cai's repeated reassurances that he did own the title to the lots (FAC ¶¶ 37, 44, 116) do not meet his burden. This broad, general allegation, without more, is insufficient to support a plausible inference that he did not at least have a duty to investigate his ownership interests in light of the circumstances described above. The statute of limitations, which is two to four years (*Platt.*, 522 F.3d at 1054-55; *Am. Master Lease*, 225 Cal. App. 4th at 1479; *McGowan*, 505 F. Supp. 3d at 1025), thus bars Plaintiff's fraud and negligence-based claims.

***

The Court therefore GRANTS Defendants' motion to dismiss based on statute of limitations grounds as to all of Plaintiff's claims. Plaintiff is granted leave to amend to allege facts that would plausibly support tolling or application of the discovery rule, if he can do so in good faith.

### B. *Respondeat Superior*-Based Claims

Plaintiff alleges five claims against Defendants based on the doctrine of *respondeat superior*. Defendants argue that Plaintiff's claims for fraud by omission, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, breach of contract, and negligent misrepresentation all fail because Plaintiff has not alleged that Ms. Cai was acting in the scope of her employment.

To state a claim based on *respondeat superior* liability, the plaintiff must plead facts that create a plausible inference that the employee was acting within the scope of her employment.

*Baptist v. Robinson*, 143 Cal. App. 4th 151, 161 (2006). An employer will not be held liable for an employee's intentional tort that did not have a causal connection to the employee's work. *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 296 (1995). If the act only served the employee's personal interest, it is less likely to be within the scope of employment, even if it was done while at the place of employment. *Lisa M.,* 12 Cal. 4th at 298; *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 140 (1981). However, the employee must be "acting substantially outside of their duties" and not engaged in an activity that is an outgrowth of their duties to be considered no longer within the scope of employment. *Robinson*, 143 Cal. App. 4th at 161.

Here, Plaintiff alleges that he first met Ms. Cai when she was working as a Vice President in BofA's Cupertino branch, and Ms. Cai first told him about the investment opportunity at that BofA office. (FAC ¶¶ 24, 31.) In addition, Plaintiff alleges that he believed Ms. Cai to be his financial advisor, and that "she was acting as a BOA employee and within the scope of her employment which included recommending investments to customers, when [s]he inflicted harm on the Plaintiff." (FAC ¶¶ 23, 29, 93.)

Although Plaintiff alleges that Ms. Cai was acting within the scope of her employment when they first spoke about the investment opportunity on BofA property, the allegation that the torts occurred at least in part while Ms. Cai was at work is not sufficient to support a plausible inference that she was acting within the scope of her employment. *See Farmers Ins. Group v. County of Santa Clara*, 11 Cal. 4th 992, 1005 (1995) ("[i]f an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior") (cleaned up); *see also id.* at 1007 (holding that fact that nearly all of harassing conduct took place at workplace during work hours was insufficient to establish that wrongdoer was acting within scope of his employment). Rather, Plaintiff must allege facts that give rise to a plausible inference that assisting with this investment arose out of Ms. Cai's employment. Plaintiff's conclusory allegations that Ms. Cai was acting as a BofA employee and within the scope of her employment are insufficient. (FAC ¶¶ 93, 100, 105, 113, 122.) Indeed,

Plaintiff's allegation that Ms. Cai was receiving "kickbacks" from the company in Nicaragua that owned the Seaside Marina lots (FAC ¶ 87), supports a plausible inference that Ms. Cai's conduct toward Plaintiff was personal in nature and *not* within the scope of her employment; it does not support an inference that she was acting as an BofA employee. *See Lisa M.,* 12 Cal. 4th at 298 (stating that if the act was done for personal interests, it is less likely within the scope of employment). The allegations that Plaintiff wired the investment funds to a personal bank account owned by Ms. Cai and her spouse (FAC ¶¶ 35, 40; Dkt. No. 7-6 ¶¶ 8, 11) are also inconsistent with Plaintiff's conclusory allegation that Ms. Cai was acting in the scope of her employment. Accordingly, Plaintiff has failed to allege facts which would give rise to a claim against BofA for any torts committed by Ms. Cai.

In light of Plaintiff's failure to allege a basis for *respondeat superior* liability, Plaintiff's claims for fraud by omission, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, breach of contract, and negligent misrepresentation all must be dismissed because they are premised on respondent superior liability rather than on BofA's own actions.

### C. Negligent Hiring, Supervision, and Retention Claim

In addition to Plaintiff's *respondeat superior*-based claims, Plaintiff alleges that Defendants negligently hired, supervised, and retained Ms. Cai. Defendants move to dismiss these claims on statute of limitations grounds, discussed above, and for failure to state a claim.

To state a claim for negligent hiring, Plaintiff must allege that BofA, as the employer, knew or should have known, at the time of hiring, that the employee created a risk or would cause harm. *See Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996). Although Plaintiff alleges that "[a]t some time prior to 2006, Ms. Cai became unfit to perform the work for which he [sic] was hired by reason of her conflicts of interest, fiduciary breaches…", Plaintiff does not allege facts regarding Ms. Cai's hiring or pre-dating her hiring. (FAC ¶ 81.) Indeed, Plaintiff implies that Ms. Cai was not unfit at the time Defendants hired her but that she "became unfit" later in her employment (FAC ¶ 81.) and does not allege facts regarding Defendants' knowledge prior to or at the time of Ms. Cai's hiring.

11

Defendants also move to dismiss Plaintiff's negligent supervision claim. An employer can be liable for an unfit employee's actions if they negligently supervised the employee. *Capital Cities*, 50 Cal. App. 4th at 1054. Here, Plaintiff does not allege facts regarding Defendants' supervision of Ms. Cai sufficient to give rise to a negligent supervision claim.

Lastly, Defendants move to dismiss Plaintiff's negligent retention claim. An employer can be liable for negligently retaining an unfit or incompetent employee if the employer knew or should have known that this employee created a "risk or hazard and a particular harm materialized." *Id.*; *Delfino v. Aglient Tech., Inc.*, 145 Cal. App. 4th 790, 815 (2006). Plaintiff alleges Defendants should have done a cursory investigation to discover that Ms. Cai was suggesting investments in Nicaraguan property. (FAC ¶ 82.) However, Plaintiff does not allege why Defendants would have had any sort of notice or knowledge that the investigation was needed and therefore could not have known that she may be unfit.

Therefore, the Court DISMISSES Plaintiff's negligent hiring, supervision, and retention claims for failure to state a claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motion to Dismiss. All of Plaintiff's claims are barred by the statute of limitations based on the complaint's allegations and judicially noticeable facts. Further, Plaintiff does not allege facts that state any claim. As it is not apparent as a matter of law that Plaintiff cannot allege facts that would cure at least some of the complaint's defects, the Court grants him leave to amend. His amended complaint, if any, must be filed within 30 days of this Order.

This Order disposes of Docket No. 7.

**IT IS SO ORDERED.**

Dated: 02/28/2022

JACQUELINE SCOTT CORLEY
United States Magistrate Judge